IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Criminal Action Number** |
| | ) | **06-00014-01-CR-W-NKL** |
| Terrell D. Wills, | ) | |
| | ) | |
| Defendant. | ) | |

## Report and Recommendation

Pending before the Court is *Defendant's Motion To Suppress Physical Evidence, Memorandum In Support Thereof And Request For Evidentiary Hearing*, filed May 8, 2008 (Doc. #19). On July 18, 2006, the undersigned held an evidentiary hearing on the defendant's motion. Defendant Terrell D. Wills was present and was represented by his counsel, Miller Leonard. The government was represented by Assistant United States Attorney Stefan Hughes. At the evidentiary hearing, the government called Trooper Matthew Halford and Corporal Darrin Lilleman of the Missouri State Highway Patrol as witnesses. Additionally, the following exhibits were admitted into evidence:

| Number | Description |
|---|---|
| 1. | videotape of the August 14, 2005 car stop |
| 2. | photocopy of photographs |

On the basis of all the evidence adduced at the evidentiary hearing, the undersigned submits the following:

## PROPOSED FINDINGS OF FACT

1. On August 14, 2005, at approximately 11:00 p.m., Trooper Halford was on duty patrolling I-70 near the 71-mile marker. (Tr. 4-5, 7, 28)

2. Trooper Halford was notified through dispatch that Troop A in Lee's Summit had received calls notifying them of a possibly intoxicated, careless and imprudent driver traveling eastbound between both lanes of traffic through Lafayette County into Saline County. (Tr. 6, 25) Trooper Halford received sequential transmissions from Troop A as the vehicle traveled past the 60-mile through 68-mile markers and as the vehicle approached Trooper Halford's location. (Tr. 6-7, 25-27)

3. Trooper Halford was informed that the vehicle in question was believed to be a "PT Cruiser".

4. A "PT Cruiser" and a "Chevrolet HHR" are similar-looking vehicles. (Tr. 7)

5. Trooper Halford observed a gray Chevrolet HHR traveling eastbound on I-70. A pickup truck (which Trooper Halford was informed was the party who called Troop A) was also traveling eastbound on I-70. (Tr. 11)

6. Trooper Halford pulled behind the vehicle and watched the vehicle drift from the left lane, over the center line, into the right lane, and over the right fog line, at which point he initiated his emergency traffic lights to stop the vehicle. (Tr. 5, 8, 21, 30-32)

7. After Trooper Halford turned on his traffic lights, the vehicle pulled to the right shoulder of the road, pulled out briefly back onto I-70, and then pulled back onto the right shoulder, where it came to a stop. (Tr. 10, 33, 46)

8. When the vehicle came to a complete stop, Trooper Halford exited his vehicle and approached the driver's vehicle from the right rear window (passenger side) in order to avoid traffic on I-70. (Tr. 8, 53-54)

9. While the driver, later identified as defendant Wills, was looking back through the window on the driver's side, Trooper Halford knocked on the rear passenger window. (Tr. 8) In response, Defendant Wills rolled down the window. (Tr. 8)

10. At this point in the encounter, Corporal Lilleman arrived on the scene to assist Trooper Halford and approached the vehicle in the same direction as Trooper Halford. (Tr. 9, 53-54)

11. Trooper Halford asked Defendant Wills for his identification and to turn off the

vehicle and take the keys from the ignition. (Tr. 8, 55)

12. Defendant Wills complied with Trooper Halford's instructions but did so in a deliberately slow manner. (Tr. 8, 23, 55-56, 74)

13. In response to Defendant Wills' slow compliance, for officer safety reasons, Corporal Lilleman approached the driver's door, opened the door and asked Defendant Wells to step outside the vehicle. (Tr. 9, 23, 36, 51, 56)

14. Initially, Defendant Wills did not comply with Corporal Lilleman's request to exit the vehicle, but ultimately did so with his hands in or near his pockets. (Tr. 12, 56)

15. Corporal Lilleman ordered Defendant Wills at least twice to keep his hands outside his pockets so that they were visible. (Tr. 12, 48, 56, 58, 62) After being ordered not to, Defendant Wills attempted on more than one occasion to place his hands inside his pockets. (Tr. 23, 57, 58-59) As Defendant Wills reached the rear of the vehicle, Trooper Halford and Corporal Lilleman conducted a patdown search for weapons. (Tr. 13, 18, 23, 49, 59)

16. As Trooper Halford was conducting the patdown search, he felt what he believed from training and experience to be a small bag of marijuana. (Tr. 14, 38, 50-51) As Trooper Halford disengaged from the patdown search, Defendant Wills turned toward Trooper Halford who instructed him to turn back around and who then placed him under arrest and applied handcuffs. (Tr. 14, 50-51, 59-60)

17. After Defendant Wills was placed under arrest, Corporal Lilleman searched the Chevrolet HHR and found a handgun, two camouflage hats, two black sweat shirt hoodies, and a digital scale. (Tr. 20, 24, 39-40, 62)

## PROPOSED CONCLUSIONS OF LAW

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses,[1] papers, and effects, against unreasonable searches and seizures, shall not be

---

[1] The stop of an individual in an automobile raises many of the same concerns as a search of an individual's home.

> Automobile travel is a basic, pervasive, and often necessary mode of transportation to and from one's home, workplace, and leisure activities. Many people spend more hours each day traveling in cars than walking on the streets. Undoubtedly, many find a greater sense of security and privacy in traveling in an automobile than they do in exposing themselves by pedestrian or other modes of

violated. . . ." U.S. CONST. amend. IV.  As made clear in the Fourth Amendment, the constitution does not forbid all searches and seizures, but only <u>unreasonable</u> searches and seizures.  *Elkins v. United States*, 364 U.S. 206, 222, 80 S.Ct. 1437, 1446 (1960).  Nonetheless, as the United States Supreme Court pointedly noted over one hundred years ago:

> No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law.

*Union Pacific Railroad Co. v. Botsford*, 141 U.S. 250, 251, 11 S.Ct. 1000, 1001 (1891).

In many search and seizure scenarios, the question of legal authority (as well as reasonableness) is presumptively satisfied by a judicially-issued warrant.  However, over the years, many exceptions to the warrant requirement have been recognized.  For instance, and pertinent to the issue in this case, in *Terry v. Ohio*, 392 U.S. 1 (1968), the Supreme Court held that a law enforcement officer can stop and briefly detain a person for investigatory purposes, even without a warrant, if the officer has a reasonable suspicion – supported by articulable facts – that criminal activity "may be afoot," even if the officer lacks probable cause for an arrest.  *Id*. at 30.  However, the officer conducting such an investigatory stop must be able to articulate something more than an "inchoate and unparticularized suspicion or 'hunch.'" *Id*. at 27.  Moreover, the mere fact that an officer's suspicion or hunch, in fact, was well-founded is <u>not</u>

---

> travel. Were the individual subject to unfettered governmental intrusion every time he entered an automobile, the security guaranteed by the Fourth Amendment would be seriously circumscribed. As *Terry v. Ohio* recognized, people are not shorn of all Fourth Amendment protection when they step from their homes onto the public sidewalks.  Nor are they shorn of those interests when they step from the sidewalks into their automobiles.

*Delaware v. Prouse*, 440 U.S. 648, 662-63, 99 S.Ct. 1391, 1400-01 (1979).

dispositive for a constitutional analysis, rather, the Fourth Amendment requires "some level of objective justification for making the stop." *INS v. Delgado*, 466 U.S. 210, 217 (1984).

The rights protected by the Fourth Amendment are implicated in this case by Officer Halford's decision to stop the automobile being driven by Wills and thereafter to detain Wills. *Delaware v. Prouse*, *supra*, 440 U.S. at 653. However, it well-settled that "[a]n investigation stop does not violate the Fourth Amendment if the police have a reasonable suspicion that the vehicle or its occupants are involved in criminal activity." *United States v. Bell*, 183 F.3d 746, 749 (8th Cir. 1999). In this case, the Court finds that Officer Halford had the requisite reasonable suspicion to stop a vehicle that he believed was being operated in a careless and dangerous manner, as evidenced, in part, by the vehicle's crossing of the fog line – a violation of Missouri traffic laws. *Compare United States v. Herrera Martinez*, 354 F.3d 932, 934 (8th Cir. 2004) (vehicle's crossing of fog line provided police officer with probable cause to stop vehicle) (applying a South Dakota traffic law nearly identical to MO. REV. STAT. § 304.015).[2]

However, even though an officer may have justification to initiate a traffic stop, the ensuing detention of a vehicle's occupants "must not be excessively intrusive in that the officer's actions must be reasonably related in scope to the circumstances justifying the initial interference." *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999). Nonetheless, any justifiable traffic stop "may include asking for the driver's license and registration, asking the driver to sit in the patrol car, and asking about the driver's destination and purpose." *United States v. Alegree*, 175 F.3d 648, 650 (8th Cir. 1999). Moreover, if the officer's suspicions

---

[2] Wills cites the Court to the opinion in *United States v. Sugar*, 322 F.Supp.2d 85 (D. Mass. 2004) wherein the Massachusetts district court construed MO. REV. STAT. § 304.015, under the facts presented, to not be violated when a recreational vehicle's tires went over the fog line once on a "two-lane highway." *Id*. at 91. The Court finds the *Sugar* opinion to be distinguishable and unpersuasive to the facts of this case.

become heightened during the course of such routine investigation, the officer may be justified in expanding the scope of the investigation. *Id*. More specifically:

> If during a traffic stop, an officer develops a reasonable, articulable suspicion that a vehicle is carrying contraband, he has justification for greater intrusion unrelated to the traffic offense.

*United States v. White*, 42 F.3d 457, 460 (8th Cir. 1994).

In the present case, the Court concludes that Officer Halford was justified in stopping the vehicle being driven by Wills based on the apparent violation of Missouri traffic laws. Furthermore, the Court finds that the officer was justified in asking Wills to step out of the vehicle to be questioned.

> [O]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures.

*Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977). Moreover, given Wills erratic and non-compliant behavior, for reasons of officer safety among other justifications, Officer Wills was entitled to conduct a pat-down search of Wills. *Compare United States v. Pratt*, 355 F.3d 1119, 1121 (8th Cir. 2004)

Inasmuch as Officer Halford was entitled to conduct a pat-down search of Wills, his discovery of the marijuana on Halford's person is constitutionally sanctioned. Moreover, the discovery of the marijuana thereafter formed a permissible basis for Wills being placed under arrest. Consequently, the ensuing search of Wills' vehicle (that disclosed the weapon at the heart of this federal indictment) is justifiable either as a search incident to an arrest [*New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 2864 (1981)] or an inventory search of the vehicle [*United States v. Beal*, 430 F.3d 950, 954 (8th Cir. 2005)].

Accordingly, it is

**RECOMMENDED** that the Court, after making an independent review of the record and applicable law, enter an order **DENYING** *Defendant's Motion To Suppress Physical Evidence, Memorandum In Support Thereof And Request For Evidentiary Hearing*, filed May 8, 2008 (Doc. #19).

Counsel are reminded that each has 10 days from the date of receipt of a copy of this report and recommendation to file and serve specific objections to the same. A failure to file and serve timely objections shall bar attack on appeal of the factual findings in this report which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

        */s/ John T. Maughmer*
        **John T. Maughmer**
        **United States Magistrate Judge**